UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALYSON CORY ADAMS,

    Plaintiff,

v.                                                                   Case No. 1:10-cv-503
                                                                   Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
                                          /

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI).

Plaintiff was born on March 11, 1961 (AR 93).[1] She completed the 11th grade (AR 101). Plaintiff alleged an amended disability onset date of November 22, 1999 (AR 16, 66).[2] She had previous employment as an assembler, food service worker, housecleaner and temporary laborer (AR 97, 132-40). Plaintiff identified her disabling conditions as a herniated disc in the neck and nerve damage to the right arm (AR 96). On April 28, 2008, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 16-27). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

[2] The court addresses plaintiff's disability onset date in detail in § II, *infra*.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits

is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff *may* have engaged in substantial gainful activity since the amended alleged disability onset date of November 22, 1999, noting that plaintiff was employed in 1999, 2000 and 2001 (AR 18-19). In reaching this conclusion, the ALJ found that there was "insufficient evidence in the record to fully address the question of whether or not the claimant ever performed substantial gainful activity at any time since the alleged amended onset date of November 22, 1999," and that she likely engaged in substantial gainful activity in 2001 (AR 19). The ALJ, however, did not address this issue fully because plaintiff's application for disability failed for "other reasons" (AR 19). With respect to events in 2001, the ALJ observed that plaintiff's *original* alleged disability onset date of November 5, 2001, coincided with the date she was injured in an automobile accident (AR 19, 23, 66, 93 609). The ALJ also determined that "[i]f the claimant appeals this decision or files a new claim in which substantial gainful activity is material, this question must be fully addressed" (AR 19). The ALJ further determined that plaintiff met the insured status requirements as of the Social Security Act through December 31, 2006 (AR 18).

At step two, the ALJ found that plaintiff suffered from severe impairments of: degenerative disc disease of the cervical spine; major depressive disorder; and generalized anxiety disorder (AR 19). The ALJ found no medical evidence to support the existence of severe impairments in the form of right shoulder pain, low back pain, hip pain, or knee pain (AR 19). The ALJ also determined that plaintiff's allegation of disabling headaches was not a severe impairment

4

because the headaches had not lasted for 12 months (AR 19-20). In this regard, the ALJ noted that plaintiff's headaches had been well controlled by specific medication in the past, and that while the headaches were not controlled in the past 1 1/2 months by a replacement medication, there was no evidence that the headaches had met the 12-month duration necessary to qualify as a severe impairment (AR 19-20).

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1(AR 20). The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) to perform a limited range of sedentary work:

> . . . except that she can lift and/or carry no more than 10 pounds, can stand and/or walk less than two hours per eight hour day with normal breaks, no repetitive reaching or fine manipulation with her with her [sic] right upper extremity and no repetitive pushing pulling with either upper extremity; involving low stress simple repetitive work with few rules with no more than occasional contact with the public, co-workers or supervisors.

(AR 21). The ALJ also found that plaintiff was unable to perform any past relevant work (AR 25).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of light jobs in the national economy (AR 26-27). Specifically, plaintiff could perform approximately 9,500 jobs in the regional economy (defined as the State of Michigan) such as: automatic machine tender; inspector/sorter; or general office clerk (AR 26). Accordingly, the ALJ determined that plaintiff was not disabled under the Social Security Act from November 22, 1999 through the date of his decision (April 8, 2008) (AR 27).

### III. ANALYSIS

Plaintiff raised two issues on appeal.

### A. Substantial evidence does not support the ALJ's decision to find plaintiff to be partially credible.

An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed in unpublished opinions that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, No. 08-4706, 2010 WL 4810212 at *3 (6th Cir. Nov. 18, 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact" *Sullenger v. Commissioner of Social Security*, No. 07-5161, 2007 WL 4201273 at *7 (6th Cir. Nov. 28, 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

The ALJ found that plaintiff statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent the symptoms were inconsistent with the RFC assessment (AR 22). In support of this finding, the ALJ noted that plaintiff failed to apprise the agency of a financial "settlement":

> When the claimant filed her application for supplemental security income she agreed to report the receipt of any income from any source. On October 9, 2006 she reported to her mental health clinician that she was having some conflict with the

boyfriend concerning how they would spend the money she received in a "settlement," perhaps from her motor vehicle accident. There is no evidence in the record that she ever reported the receipt of such money to the supplemental security income authorities, and perhaps she is not even eligible as of the date of receipt of this money.

(AR 22). The court agrees with plaintiff that the ALJ overreached with respect to plaintiff's lack of credibility in this instance, because the record is mute with respect to whether plaintiff actually received a settlement, the date she received the settlement or the amount of the settlement.[3]

The ALJ also points to an incidents that occurred after plaintiff's automobile accident in November 2001. Specifically, the ALJ notes that plaintiff returned to the emergency room complaining of pain despite the use of Vicodin (24). This action led the ALJ to conclude that "[c]learly she was obtaining controlled substances illicitly" (AR 24). This conclusion is not supported by substantial evidence. The emergency room records indicate only that plaintiff was treated after the accident on November 6, 2001 and when she returned complaining of pain on November 9th, she was given Vicodin and "Vicodin warnings" (AR 298-303). There is no mention in the emergency room records that plaintiff engaged in drug seeking behavior. To the extent that the ALJ relied on this incident to reach an adverse credibility determination, his reliance is unsupported by substantial evidence.

However, other substantial evidence supports the ALJ's credibility determination. First, the ALJ relied on plaintiff's inconsistent statements regarding her drug use. Pursuant to a

---

[3] The court notes that plaintiff's counsel is less than candid on this issue. While counsel dodges the question of whether his client received a settlement (i.e., "[t]he existence of any settlement is so unclear that the ALJ has to speculate what the alleged settlement is for by saying 'perhaps' the settlement was related to her motor vehicle accident"), he argues that even if plaintiff did receive a settlement, her failure to report it to the agency was a result of her own ignorance or neglect due to her mental impairments and narcotic medications. Plaintiff's Brief at pp. 8-9. Such arguments are based on sheer speculation and only beg the answer to the simple question of whether plaintiff received a settlement from the 2001 automobile accident.

court order, plaintiff began receiving mental health treatment in 1998 related to substance abuse issues (AR 23). In December 1999, plaintiff expressed suicidal ideations while using methadone and cocaine (AR 23). She "reportedly became abstinent from street drugs for a time," missed some medical appointments, and then in May 2000 was not hired for a job because she tested positive for marijuana use (AR 23). By July 2000, plaintiff was smoking marijuana once a week, and in November 2000 her boyfriend kicked her out of the residence due to drug abuse, resulting in her children living with their father (AR 23). When plaintiff was subject to a psychiatric inpatient event from December 29, 1999 through January 4, 2000, she reported a ten or more year history of IV drug use, recent use of cocaine and daily marijuana use (AR 23). Then, plaintiff was fired from a job in 2001 for smoking marijuana (AR 23). Plaintiff gave a conflicting report of her drug use history during a consultative psychological examination in May 2005, stating that she had not used marijuana for ten years (i.e., since 1995) until she relapsed one time, was caught smoking marijuana at work and lost her job (AR 23). Then, in August 2007, plaintiff reported to Ionia County Community Mental Health that she last used marijuana in February 2002 (despite prior claims to the contrary) (AR 24).

Second, the ALJ noted that despite plaintiff's long history of substance abuse, she denied illicit drug use when treating with Dr. Rahimi in May 2003 (who recommended that all narcotic pain medication be stopped) (AR 25, 328-29) and denied any substance abuse when being treated by Dr. Pullum of the Michigan Pain Specialists in 2005 (AR 24, 379-82). In March 2005, plaintiff's drug screen was positive for marijuana, and she was informed that Dr. Pullum would discharge her as a patient if this activity continued "because we cannot be prescribing controlled substances while she is using illicit drugs" (AR 383).

8

Third, at some point in 2005 or 2006, plaintiff was placed on probation for larceny, which she explained as an innocent shoplifting mistake (AR 24).

Fourth, the ALJ pointed out discrepancies in the medical record. With respect to plaintiff's claims of upper extremity limitations (i.e., right arm pain), an MRI from November 2003 noted that a disc protrusion at C4-C5 on the left was disconcordant with plaintiff's alleged right arm pain (AR 24, 423). An x-ray and MRI of plaintiff's right shoulder in January and September 2003, respectively, showed no evidence of a right shoulder impairment (AR 24-25, 425, 427). Electrodiagnostic testing of plaintiff's right upper extremity in April 2003 showed normal reflexes, normal sensory examination and normal findings on the muscles, which was contrary to plaintiff's continued allegations of numbness and tingling (AR 24-25, 322). Finally, while Dr. Rahimi's examination in May 2003 revealed secondary myofascial pain syndrome in the right scapular stabilizer, the doctor found no evidence of any neurological findings to support plaintiff's complaints (AR 25, 328-29).

In determining plaintiff's RFC, the ALJ summarized his findings as follows:

> In sum, the above residual functional capacity assessment is supported by the objective evidence of cervical degenerative disc disease, the lack of evidence of a severe upper extremity impairment, and history of depression and anxiety. Many of the claimant's alleged symptoms are attributable to side effects of narcotic pain medication for which there is some question as to their need in light of the clinical and objective evidence and which are prescribed by a pain specialist that the claimant has not honestly informed of her addictions.

(AR 25).

The ALJ has found contradictions among the medical records, plaintiff's testimony, and other evidence. *See Walters*, 127 F.3d at 531. The ALJ's credibility determination is reasonable

and supported by substantial evidence. *Rogers*, 486 F.3d at 249. Accordingly, there is no compelling reason to disturb the ALJ's credibility determination in this case.

### B. Substantial evidence does not support the ALJ's RFC assessment.

Plaintiff contends that the ALJ's RFC is improper because it failed to address her fatigue, headaches, depression and medication. RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *See Cohen v. Secretary of Health and Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992).

#### 1. Plaintiff's mental impairments

Plaintiff's claim appears based upon a finding by a psychologist that she had a Global Assessment of Functioning (GAF) score of 40 (AR 346).[4] Plaintiff's GAF score of 40, lies within he 31 to 40 range and indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (e.g., depressed man avoids friends, neglects

---

[4] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34. The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms." *Id*. at 32. The GAF scale ranges from 100 to 1. *Id.* at 34. At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms." *Id.* At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.*

family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." *DSM-IV-TR* at 34. Plaintiff's reliance on the GAF score is misdirected.

The Sixth Circuit has rejected the proposition that a determination of disability can be based solely on the unsupported, subjective determination of a GAF score. *See Rutter v. Commissioner of Soc. Sec.*, No. 95-1581, 1996 WL 397424 at *2 (6th Cir. July 15, 1996). The Sixth Circuit has recognized that a GAF score "may have little or no bearing on the subject's social and occupational functioning." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 511 (6th Cir. 2006). "[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place." *Id.*, citing *Howard v. Commissioner of Social Security*, 276 F.3d 235, 241 (6th Cir. 2002). *See* Response to Comment, Final Rules on Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746, 50764-65 (Aug. 21, 2000) ("The GAF scale . . .does not have a direct correlation to the severity requirements in our mental disorders listings").

While the ALJ's decision addressed plaintiff's history of substance abuse at length, it did not explain the reasoning for the mental aspect of plaintiff's RFC assessment in any detail. The ALJ limited plaintiff to "low stress simple repetitive work with few rules with no more than occasional contact with the public, co-workers or supervisors" (AR 21). This limitation is consistent with the medical evidence. Plaintiff testified that she has problems being around people and working with the general public (AR 630). In addition, plaintiff's treating physician, Dr. Windeler, issued opinions to the Michigan Department of Human Services in 2006 and 2007 stating that plaintiff had no mental limitations (AR 499, 509). The mental RFC assessment from the agency physician is illegible in part (and not referenced in detail by the ALJ); however, this assessment indicates that

11

plaintiff had minimal limitations and could perform work consistent with her physical limitations (AR 369). While the ALJ states that plaintiff's treating mental health provider, Ellen Keener, MAL, MSW, "opined limitations as set forth in the [RFC]" (AR 25), the record indicates that this provider assessed plaintiff's mental ability to do work related activities as generally fair or poor (AR 550-51). Nevertheless, the record as a whole (which includes plaintiff's description of her limitations and two statements from plaintiff's treating physician that she suffers from no mental limitation) supports the ALJ's RFC with respect to plaintiff's mental condition. Even if this court might reach a different conclusion considering the evidence *de novo,* there is no basis on this limited appellate review to disturb the ALJ's decision.

### 2. Plaintiff's non-exertional impairments

Plaintiff contends that her non-exertional impairments (fatigue, headaches and medication) leave her unable to focus and cause her to struggle with drowsiness. As previously discussed, the ALJ found that plaintiff's headaches did not constitute a severe impairment. Plaintiff does not demonstrate that this condition, which is relatively recent and temporary, would affect her RFC.

The court, however, agrees with plaintiff that the ALJ substituted his own lay opinion for that of a physician when he ascribed plaintiff's drowsiness due, in part, to her failure to apprise doctors of her illicit drug use:

> Dr. Pullum prescribed and continues to prescribe narcotic pain medications, including methadone, that cause some of the allegedly disabling symptoms, such as drowsiness and lack of focus, that would likely not have been prescribed had Dr. Pullum been honestly apprised of the claimant's past significant heave substance abuse.

(AR 24).

An ALJ may not substitute his medical judgment for that of plaintiff's physicians. *See Meece v. Barnhart*, 192 Fed. Appx. 456, 465 (6th Cir.2006) ("the ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence"); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir.1996) ("The Commissioner's determination must be based on testimony and medical evidence in the record. And, as this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings").

Nevertheless, the court agrees with defendant that plaintiff's claim fails. Allegations of a medication's side effects must be supported by objective medical evidence. *Farhat v. Secretary of Health and Human Servs.*, No. 91-1925, 1992 WL 174540 at * 3 (6th Cir. July 24, 1992). *See*, *e.g.*, *Bentley v. Commissoner of Social Security*, No. 00-6403, 2001 WL 1450803 at *1 (6th Cir. Nov. 6, 2001) (noting absence of reports by treating physicians that claimant's "medication caused drowsiness as a side effect"); *Donegan v. Secretary of Health & Human Servs.*, No. 92-1632, 1993 WL 291301 at *7 (6th Cir. Aug. 2, 1993) (no objective medical evidence supported claimant's allegation that Tylenol 3 made him so drowsy he could not work); *Dodd v. Sullivan*, 963 F.2d 171, 172 (8th Cir. 1992) (no evidence in record that claimant told his doctors that the medication made him drowsy); *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (noting that the record did not disclose concerns about side effects by the several doctors who examined and treated claimant). Here, plaintiff does not point to any medical records where she reported side effects of prescribed medication to her physicians or sought to rectify the problem. Accordingly, plaintiff's claim that the ALJ improperly evaluated her RFC fails.

### IV. Substantial gainful employment

As previously discussed, the ALJ qualified his decision denying benefits by stating that "[i]f the claimant appeals this decision or files a new claim in which substantial gainful activity is material, this question must be fully addressed" (AR 19). In reviewing the ALJ's decision, the court has assumed that plaintiff has not engaged in substantial gainful activity since the amended disability onset date of November 22, 1999. Because plaintiff's claim fails whether plaintiff engaged in substantial gainful activity in 1999, 2000 or 2001, it is unnecessary for the court to remand this action to clarify exactly when plaintiff ceased engaging in substantial gainful activity. "No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989). "When 'remand would be an idle and useless formality,' courts are not required 'to convert judicial review of agency action into a ping-pong game.'" *Kobetic v. Commissioner of Social Security*, 114 Fed. Appx. 171, 173 (6th Cir. 2004), *quoting NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969).

### V. Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be affirmed.


Dated: May 27, 2011                                         /s/ Hugh W. Brenneman, Jr.
                                                            HUGH W. BRENNEMAN, JR.
                                                            United States Magistrate Judge

14

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).